FIELD, MORRIS & FENNER *v.* W. C. H. McKINNEY.

1. INJUNCTION. *Against judgment at law. Two judgments for same debt. Laches. Case in judgment.*
   M., having been garnished in an attachment suit by F. against B., and having admitted an indebtedness to the defendant, a judgment was rendered against him for the amount admitted to be due. K. had, before the garnishment, become. the owner of the debt due by M. to B., and after the judgment in garnishment, he brought an action and recovered a judgment against M. for the same indebtedness. M. then filed a bill for an injunction against the execution of the judgment in garnishment on the ground that at the time that judgment was rendered he had no notice that his debt had been assigned to K. The proof shows that M. did have notice of such assignment before the judgment in garnishment was rendered, and had ample opportunity to resist the rendition of that judgment. *Held*, that although it is a great hardship on M. to have to pay the same debt twice, his misfortune is the result of his own fault, and he is not entitled to an injunction against the judgment obtained through his inattention and neglect.

2. SAME. *Suit by garnishee to enjoin judgment. Objection to bond in attachment.*
   Where, in a suit in attachment, it is objected that the bond is not good because the only surety upon it is a bank, which has no authority under its character to become a surety, the bond may be amended, under sect. 2464 of the Code of 1880; but if the defendant, having been in due time personally served with process, make no objection to the bond, a garnishee, who has no right to object to the regularity of the proceedings in so far as they relate to the judgment against the defendant, cannot, after the rendition of such judgment object to the insufficiency of the attachment-bond as a ground for injunction against a judgment rendered against himself as a garnishee.

APPEAL from the Chancery Court of Warren County.

Hon. WARREN COWAN, Chancellor.

This is an appeal from a decree granting relief to W. C. H. McKinney, the complainant in the court below, upon a state of facts set forth in the opinion of the court.

*A. M. Lea*, for the appellants.

Considering the case now as a bill for an injunction against a judgment at law, and that is all that is now left of it, we find none of the peculiar equities which impel to that extroardinary relief, but on the contrary the not unfrequent case of a man who, by inattention to legal proceedings, finds that his day in court is gone, and opportunities of legal defence thereby lost. Mr. McKinney was summoned as a garnishee, January 19, 1881. The March term of the Circuit Court did not adjourn until April 3, 1881. It is during the period of two and a half months that we are concerned with his conduct. He said in his bill that during this period, and at no time prior thereto, did he have any notice of Kuhn's claim, and it was this averment that caused this court to retain the injunction against us. Now, if evidence, oral and written, can establish anything, this statement is shown to be untrue. It appears that he was repeatedly notified. I submit that if the facts, as now developed, had been disclosed in the record when the case was here before, this court would have affirmed the decree below as well as to us as to Kuhn. "This jurisdiction is not regarded as a favorite one with courts of equity. A bill seeking relief of this nature is watched with extreme jealousy, and the grounds upon which the interference will be allowed are confessedly somewhat narrow and restricted. It will not suffice to show that injustice has been done by the judgment against which relief is sought, but it must also appear that the result was not caused by any inattention or negligence on the part of the person aggrieved, and he must show a clear case of diligence to entitle himself to an injunction." High on Inj., sect. 85. "In illustration of the general rule laid down in the preceding section, that equity will not afford relief where an opportunity has been had of interposing the defence at law, it may be said that even where it is manifest that great hardship has been done the defendant at law by the judgment rendered against him, still if such hardship does not result from any fraud or surprise on

the part of the plaintiff, but is merely the result of negligence in making proper defence at law, relief against the judgment will be refused.  And the fact that the enforcement of a judgment would be against conscience, will not of itself warrant an injunction; however unjust and unconscionable the demand may be on which the judgment was obtained, if through neglect or carelessness, no defence was interposed at law, relief will not be granted in equity." High on Inj., sect. 99. See also sect. 102, same author, requiring diligence. The accident or mistake which is sometimes sufficient for the relief is always, and by every authority, required to be "unmixed with any fault or negligence" on the part of the applicant.  Equity will not interpose upon a defence equally available at law.  Story's Eq., sect. 894.  Nor upon a defence which has been interposed at law.  Story's Eq., sect. 894. Nor if the complainant has been guilty of laches in bringing forward the defence.  Story's Eq., sect. 895.  In *R. R. Co.* v. *Neal,* 1 Woods, 353, Justice Bradley denied relief in a case appealing strongly to the sympathy of the court.  The plain truth is that nothing but sheer unmixed negligence could have put McKinney in the attitude he occupies.  "He brings upon himself a double liability by his own negligence, and the law will not protect a negligent garnishee any more than it will justify carelessness in any other party."  Drake on Attach., sect. 630.  There is no merit in the objections to the attachment-bond given by appellants in the Circuit Court proceedings. The surety on the bond is the Vicksburg Bank, signing by its president, and there is not enough in the record to warrant this court in saying that this undertaking is *ultra vires* and void; but if these objections were ever so good appellee cannot now avail himself of them.  These objections are disposed of by an affirmative answer to the question': Have Field, Morris & Fenner a valid judgment against Brown & Bro., enforceable against them generally, rendered in the proceedings in which McKinney was summoned as garnishee?  The Circuit Court of Warren County had undoubted jurisdiction of the

subject-matter, and by personal service of its process it acquired jurisdiction of the parties defendant in that suit. Thus possessed of the whole case, subject-matter, and parties, it rendered a general judgment against the defendants, and condemned the chose in action in controversy to its payment. No one will contend that plaintiffs in that suit may not have execution against any property of Brown & Bro. subject to execution. Undoubtedly it is a valid subsisting judgment conclusive upon all parties and privies, including the garnishee. "In the first place (*i.e.*, where the defendant is personally served with process) the jurisdiction obtains through the service of the process on the defendant; the attachment is not the foundation of the jurisdiction, but a provisional remedy allowed to the plaintiff for the purpose of securing the demand. * * * Though the attachment were illegally issued, yet it is the privilege of the defendant alone to take advantage of it, and if he waive the illegality, and the effects in the garnishee's hands are subject to the payment of his debt, the defendant is concluded by the judgment of the court, and cannot afterwards question its sufficiency to protect the garnishee." Drake on Attach., sect. 692. When it is conceded, as it must be, that this judgment, if payment had been made under it by the garnishee, would be a full protection to him against the claim of Brown & Bro. for the same debt, there is nothing left of this part of the case.

*Shelton & Crutcher*, for the appellee.

Two questions then arise in the cause :—

1. In view of the pleadings and proofs are the allegations of the original bill shown to be true?

2. Was there such a bond given on taking out the attachment as the statute required, and, if not, was the attachment void and the judgment against the complainant as guarnishee void?

We will consider the second question first. What is the bond required by the statute, and is it necessary to the validity of the

attachment?   Sect. 2416, Code 1880, says :  " The creditor, his agent or attorney, shall give bond with a surety or sureties.". And sect. 2418 says : " The affidavit being made and bond given as. aforesaid, the officer shall proceed to issue the attachment," etc.   It is clear from this that the bond must precede the issuance of the attachment.   Again, is this provision of the statute merely directory, or is the giving of the bond a condition precedent to the issuance of the attachment?   In *The State* v. *Fortenberry*, 54 Miss. 316, the Supreme Court say : " The right of the defendant to recover damages is essential to the existence of the remedy.   The defendant is entitled to a judgment for damages both against the plaintiff and his sureties." If the right of the defendant to recover damages both against the plaintiff and his sureties is essential to the existence of the remedy, surely it cannot be questioned that the giving of the bond is a condition precedent to the issuance of the attachment.   Drake on Attach., sects. -86, 87, says : That the officer issuing an attachment exercises a special and limited jurisdiction conferred by a particular statute ; and " where an officer exercises extraordinary power under a special statute, prescribing the occasion and mode of its exercise, no presumption in favor of his action will be entertained.   On the contary, the proceedings of such an officer will be held illegal unless they be according to the statute and the facts conferring such jurisdiction appear affirmatively."   In sect. 115 the same writer says : " Where the statute requires a bond to be given before the attachment issues, a failure to give it will be fatal to the suit," etc.   " That great strictness has been manifested on this point, and without doubt very properly."   In sect. 116, speaking of the rule adopted in Mississippi, he says : " That the want of a sufficient bond cannot be cured by filing a proper one after suit is brought ; that the absence of the bond is not remedied by the appearance of the defendant and his pleading to the action, and that a judgment against a garnishee who has answered under oath an attachment issued without bond is void," etc.   See also *Davis*

v. *Marshall*, 14 Barb. 96; *Kelley* v. *Archer*, 48 Barb. 68. It will be seen from the above authorities that a bond must be given before the attachment can issue, and that if it issue before the bond is given it will be void. It is further evident that the bond must be such as the statute requires. "No other agreement will supply its place." The question now arises, are the sureties a necessary part of the bond? Does a bond without surety comply with the statute? Sect. 2415 requires that the creditor shall make oath to one or more of eight causes of attachment prescribed in that section. Sect. 2416 says: "The creditor, his agent or attorney, shall also give bond with a surety or sureties, to be approved," etc., and prescribes the form of the bond. And sect. 2418 says: "On affidavit being made and bond given, as aforesaid, the officer before whom it is made shall issue," etc. We submit that from reading these three sections of the statute in the order in which they come two facts are evident: First, affidavit and bond must both be made before the writ can issue. They are conditions precedent. Second, the bond, in order to comply with the requirement of the statute, must have "a surety or sureties." The language of the Supreme Court in *The State* v. *Fortenberry*, *supra*, confirms the conclusion that the bond must have sureties. Was the bond given in this case, with the Vicksburg Bank as surety thereon, such as the statute required? The bank signed the bond as surety purely as an act of accommodation being indemnified by a New York bank. The Vicksburg Bank is a corporation chartered under the laws of 1878. Acts 1878, p. 637, sect. 2. The only powers possessed by the corporation are expressed in said section, to wit: To carry on a general banking business; and to that end, to have power to receive money and securities on deposit, to make and take bonds, bills, notes, and other evidences of debt, and to buy, sell, and discount the same (when made by other persons); to buy and sell gold and silver, and other coins and bullion; to buy and sell bills of exchange; to lend and borrow money on real or personal security, and to exercise all incidental

powers necessary to carry on a general banking business. Therefore, if the bank was incapable of making this contract, then the contract was utterly void and the bond was simply the sole obligation of the plaintiffs without "a surety or sureties." For it cannot be pretended that the Legislature, when it said "a surety or sureties," meant the act of a party whose obligation was worthless, because of his incapacity to make the contract. We now come to inquire whether or not, in view of the decision of the Supreme Court in this case, we are entitled to have the injunction made perpetual on the merits without regard to the legal propositions we have just argued. We assert that we are. The principle of law governing in such a case as this is well stated in High on Inj. 56, sect. 86. He says (speaking of injunctions against judgments at law) : The general principle underlying the jurisdiction is, that it must be against conscience to execute the judgment sought to be enjoined, and it must clearly appear that the person aggrieved could not avail himself at law of the equities relied upon to enjoin the judgment; or, if he was in a condition to avail himself of such equities in defence of the action at law, that he was prevented from doing so by accident, mistake, or surprise, or by fraud of the adverse party not connected with laches or negligence of his own. We think the record clearly shows : (1) that it would be against good conscience, inequitable, and wrong to execute this judgment; (2) that complainant's difficulty is the result of accident and mistake ; (3) that complainant was not guilty of negligence — certainly not of gross negligence — and that under the rules of law only gross negligence could defeat complainant in this suit ; (4) that complainant has a good defence against the judgment sought to be enjoined. Such a defence as shows that defendants — the plaintiffs in the judgment — had no cause of action against him ; (5) and that with the facts in this case before them the Supreme Court on the appeal from the decree rendered on the motion to dissolve the injunction, have declared in their opinion that said facts entitle said com-

plainant to a perpetual injunction against the judgment. Therefore, the matter is almost *res adjudicata*, because the answers and proof have not changed the case made in the original bill, except to strengthen it.

CHALMERS, J., delivered the opinion of the court.

Field, Morris & Fenner garnished McKinney as the debtor of their debtors, Brown & Bros., and upon his answer acknowledging an indebtedness in the sum of $735, had judgment for that amount.

Subsequently, Alexander Kuhn, to whom the debt due by McKinney had been assigned before the garnishment by Field, Morris & Fenner, brought suit against McKinney on the same cause of action, and likewise recovered judgment against him. Thereupon he filed his bill praying that the holders of the two judgments might be compelled to interplead, so that he might be saved from having to pay the same debt twice. His bill for an interpleader was dismissed in this court, upon the ground that it should have been filed before the last judgment against him was obtained, and that having permitted that judgment to go with full knowledge of all the facts, he could not compel his successful antagonist in that action to re-litigate the same question with the other claimant of the sum due ; but we retained the suit as a bill for an injunction against the judgment-creditors in the garnishment proceeding (Field, Morris & Fenner), upon the allegation contained in the bill that at the time when the judgment in that suit was rendered McKinney had no notice that the debt originally due by him to Brown & Bros. had been transferred to Kuhn, and did not discover that fact until after the term of the court at which the judgment in garnishment was rendered had closed. *Mc-Kinney* v. *Kuhn*, 59 Miss. 186.

Upon the return of the case from this court to the court below this allegation was denied by Field, Morris & Fenner, and the proof taken upon the issue thus made clearly establishes, as we think, that it was untrue. It was shown that Kuhn noti-

fied McKinney by letter before the garnishment suit was instituted that the debt had been transferred to him, but this letter McKinney says he did not receive.   Kuhn's attorneys notified him twice before he filed his answer as garnishee, and these letters he received and read, but misunderstood their contents. The same attorneys again wrote him after the judgment in garnishment had been entered, notifying him of the fact, and advising that he take steps during the term to have it vacated, as they would certainly collect the debt for their client, and he would thus be compelled to pay twice.   This communication he also received, but again misunderstood, and took no steps whatever to avail himself of the advice given.   A copy of one of the letters received by him is in the record, and we neither perceive anything ambiguous in its contents, nor anything in the attendant or succeeding circumstances to justify his unexcusable want of attention to the business.   It is a great hardship that he should be compelled to pay the same debt twice, but this is as clearly his fault as it is his misfortune.    To warrant the injunction or vacation of a judgment at law by a court of equity, " it will not suffice to show that injustice has been done by the judgment against which relief is sought, but it must also appear .that this result was not caused by any inattention or negligence on the part of the person aggrieved, and he must show a clear case of diligence to entitle himself to an injunction."  High on Inj., sect. 85.

The judgment is sought to be enjoined upon the further ground that it is void by reason of the fact that in suing out the attachment against Brown & Bros. (in which suit McKinney was garnished), the only surety upon the attachment-bond was the Bank of Vicksburg, which had, by its charter, no authority to become a surety.   Hence, it is said the whole proceeding, as well against the garnishee as against the defendants in attachment, was a nullity.

This position is not maintainable for two reasons : —

1. Conceding that the bank had no authority to become surety on the bond, the instrument was amendable under the

statute (sect. 2464, Code 1880), and the defendants who had been- personally served with process made no objection to it. Certainly, the judgment rendered was not void.

2. Where a defendant in attachment is personally served, the garnishee has no concern with the regularity or merits of the judgment against him, and can complain only of defects which affect himself.

When the defendant in attachment is personally before the court in the same suit, the garnishee has no interest in the jurisdiction of the court, nor in the regularity of the proceedings, in so far as they relate to the judgment against the defendant, and cannot, of course, thereafter attack the validity of such judgment. His only concern in such case is with the proceedings against himself. He cannot, therefore, under these circumstances, object that the bond given for the protection of the defendant was invalid. Drake on Attach. (5th ed.), sect. 692, *et seq*.

Decree reversed and bill dismissed.